(78 Misc. Rep. 457.)

### MENDELSON v. GAUSMAN.

(Supreme Court, Special Term for Trials, Kings County. December, 1912.)

INSURANCE (§ 777*)—BENEFIT POLICY—DESIGNATION OF BENEFICIARIES—CONFLICTING CLAIMS.

    Where the laws of a fraternal order, authorizing the members to name an affianced wife as beneficiary of a death benefit on furnishing evidence of such relation, provide that the issuance of a certificate shall not be conclusive of such relation, and that, if any designation fails for illegality, the benefit shall be payable to the member's wife, where a deceased member left defendant, who was his lawful wife at the time when he attempted to designate plaintiff as his "affianced wife," she is entitled to the death benefit.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1944; Dec. Dig. § 777.*]

Action by Fannie Mendelson against the Royal Arcanum to determine conflicting claims to a benefit fund. Ella R. Gausman was interpleaded. Judgment for defendant.

Charles Burstein, of Brooklyn, for plaintiff.
Felix Reifschneider, of Brooklyn, for defendant.

KAPPER, J. If the laws of the society are to be given that force and effect which their plain reading demands, the fund in question should be awarded to the defendant. The decedent was entitled to name "an affianced wife" as beneficiary, upon furnishing to the Supreme Secretary of the order "written evidence of the affianced relation." General Laws of the Royal Arcanum, § 324. The next succeeding clause of the same section provides:

"Neither the decision of the Supreme Secretary nor the issuance of a benefit certificate shall be conclusive as to the fact of the affianced relation."

By section 330 it is provided that, "if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in class first, of section 324," who, by ref-

erence to that class and section, we find to be, firstly, the "member's wife." It is conceded that the decedent left him surviving his widow, the defendant here, and that she was his lawfully wedded wife at and prior to the time when he attempted to designate the plaintiff as his "affianced wife." The latter relation neither did nor could exist at that time, and, the designation failing for illegality, the benefit became payable to the member's wife, as provided by section 330, supra.

"The laws of the association, as found in its constitution, must govern the rights of these parties. No member could dispose of his interest in the endowment fund contrary to those laws, nor except as permitted by them. * * * No designation could be valid unless made 'in accordance with the laws and rules' of the association." Sanger v. Rothschild, 123 N. Y. 577, 579, 26 N. E. 3.

The plaintiff's retort to the plain provisions of the laws of the society, above quoted, is that defendant is in no position to advance them, as such prerogative is reserved by the law of the state to the society alone. And the cases of Luhrs v. Supreme Lodge, 7 N. Y. Supp. 487;[1] Maguire v. Maguire, 59 App. Div. 143, 69 N. Y. Supp. 61; and Coulson v. Flynn, 181 N. Y. 62, 73 N. E. 507, are cited to support that contention. In the Luhrs Case, supra, it appeared clearly that, upon the naming of a beneficiary disentitled to the benefit, the laws of the society commanded a payment of such benefit either to the personal representative of the member or reverted it back to the relief fund, and it was held that, as the certificate under which the plaintiff claimed had been surrendered and canceled, her rights under it were ended.

The court then added to this ruling the following language:

"The association only can raise the question as to whether the beneficiary named in the certificate is entitled to claim, and this defense cannot be interposed by a person in whose favor no certificate exists and *who has no other claim*."

In the Maguire Case, supra, the Appellate Division, citing the Luhrs Case, say that the contention that the designation of the beneficiary was ultra vires the council would be available to the council alone, and added:

"In any event, it cannot be maintained by the plaintiffs, who have no certificate, and who came into court *without any basis for any claim whatever*."

In the Coulson Case, supra, the two cases last cited were approvingly referred to; but the court, as it seems to me, extended the scope of the phrases, "who has no other claim" and "without any basis for any claim whatever," when it said that those cases held that the claimants came "into court having no certificate at all and without a *contract* basis for any claim whatever." It may be that the possession of a certificate is to be deemed a *contract* basis for the claim, but that can hardly be so regarded when the nature of the liability is considered, based as it wholly is upon the member's membership and his relations to the society, and not at all upon the status of

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 54 Hun, 636.

the beneficiary. The Coulson Case held that the language of the certificate constituting Flynn (the defendant) the beneficiary was in conformity with the society's act of incorporation; and no other support of the rights of the beneficiary was necessary to uphold the judgment in his favor.

It is quite clear to my mind that the cases relied on in the Coulson Case in support of the holding that there was no *contract* basis for the claim did not so hold, but that they simply determined that the claimants there were in court without *any basis for any claim*. An examination of the record on appeal in the Maguire Case shows that the question involved was whether or not the defendant Kate Maguire, "niece," was one of the "family" of the member; and that record further shows that the laws of the society there involved did not provide that in the case of an illegally named beneficiary a reversion of the fund took place to one who could be legally named, such as is so explicitly provided for at bar. I do not understand the cases referred to hold as a definite proposition, applicable to every controversy between rival claimants, that perforce the interpleader the illegality of designation is waived. What they clearly do hold is that the defeated claimants had no *basis* whatever for their claims after their certificates had been canceled and surrendered, for the reason that nothing was saved to them under the laws of the respective societies. The effect of the interpleader in the case at bar, in my opinion, is well stated by Judge Pryor in Di Messiah v. Gern, 10 Misc. Rep. 30, 31, 30 N. Y. Supp. 824, 825, where in disposing of a similar contention he said:

"It is said that the lodge alone may avail of this fraud, and that by bringing the fund into court it signifies its assent to a payment to the plaintiff. Plaintiff's certificate is the sole muniment of her title, and if that be invalidated she has no claim to the money. By interpleading the parties the lodge brings the fund into court for the one to whom it shall be adjudged. This, surely, is no waiver of the fraud, but is a submission of its effect to the decision of the court."

See, also, Kult v. Nelson, 24 Misc. Rep. 20, 53 N. Y. Supp. 95.

Another ground upon which the judgment in the Coulson Case was upheld was that of an estoppel against the society itself which precluded it from questioning the validity of the certificate; and it is not pretended that the society at bar would have been estopped from interposing the defense of illegality of designation had it itself defended in lieu of interpleading the defendant. As the alleged "affianced wife" here could only have been so designated upon furnishing to the society evidence of the relationship, and as the proof of the existence of such relationship was expressly made inconclusive by its laws, the fraud is apparent and should not be sanctioned by a court of equity.

Complaint of the exclusion of evidence showing that plaintiff loaned money to the decedent is without merit. Plaintiff was designated as "the affianced wife," and not as one "dependent upon the member for maintenance." A loan by plaintiff to the decedent would not indicate her to be a "dependent."

Judgment for defendant.